**O**

# United States District Court
# Central District of California

MARCELO V. PACHECO,

    Plaintiff,

  v.

FORD MOTOR COMPANY,

    Defendant.

Case № 2:18-cv-09006-ODW (ASx)

**ORDER GRANTING IN PART PLAINTIFF'S MOTIONS FOR ATTORNEYS' FEES, COSTS, AND EXPENSES [43] [44]**

## I.   INTRODUCTION

On September 17, 2018, Plaintiff Marcelo V. Pacheco filed suit against Defendant Ford Motor Company ("Ford") in the Superior Court of California, County of Los Angeles for violations of the California Song-Beverly Consumer Warranty Act ("Song-Beverly Act"). (Notice Removal ("NOR") Ex. A ("Compl."), ECF No. 1.) On October 18, 2018, Defendant removed the case to this Court based on diversity jurisdiction. (*See* NOR.) Over two and a half years later, on June 18, 2021, the parties settled the case. (*See* Notice of Settlement, ECF No. 32.) Plaintiff now moves for attorneys' fees, costs, and expenses in the total amount of $114,168.98. (Mot. Attorneys' Fees, ECF No. 43-1; Mot. Costs & Expenses, ECF No. 44-1 (together, "Mots." or "Motions").) After carefully considering the papers filed in connection with

the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the reasons discussed below, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motions.

## II.    BACKGROUND

On June 28, 2014, Pacheco purchased a used 2013 Ford Escape (the "Vehicle") for $31,110.32.  (Decl. of Steve Mikhov ("Mikhov Decl.") Ex. B ("Purchase Contract"), ECF No. 43-2.)  The Vehicle came with an express warranty under which Ford undertook to preserve and maintain the utility and performance of the Vehicle.  (*Id.*)

On November 21, 2016, Pacheco took the Vehicle to a Ford authorized repair facility to resolve engine-related issues.  (Mikhov Decl. ¶ 4.)  The technicians at the facility were unable to reproduce the issues.  (*Id.*)  On November 29, 2016, Pacheco returned to the facility with similar engine-related concerns.  (*Id.* ¶ 5.)  Technicians replaced a temperature sensor in the engine, but this did not resolve the problems.  (*Id.*)  From October 21, 2017 to April 6, 2021, Pacheco took the Vehicle to a Ford authorized repair facility an additional four times.  (*Id.* ¶ 6.)   Multiple attempts at repair were ultimately unsuccessful.  (*Id.*)

On or around January 23, 2018, Pacheco asked Ford to repurchase the Vehicle.  (*Id.* ¶ 8.)  Ford refused.  (*Id.*)

On September 17, 2018, with the assistance of counsel, Pacheco filed suit against Ford.  (*See* Compl.)  On October 18, 2018, Defendant removed the case to this Court based on diversity jurisdiction.  (*See* NOR).  The parties subsequently engaged in multiple rounds of discovery.  (*See* Mikhov Decl. ¶¶ 11–18.)  On June 29, 2021, Ford served Pacheco with an Offer of Judgment pursuant to Federal Rules of Civil Procedure ("Rule") 68 in the amount of $60,000.  (*See* Offer J., ECF No. 52-1.)  Pacheco accepted the same day.  (*See id.*)  Pacheco now moves to recover his attorneys' fees, costs, and expenses.  (*See generally* Mots.)

## III.    LEGAL STANDARD

"State law governs attorney fees in diversity cases."  *Negrete v. Ford Motor Co.*,

No. ED CV 18-cv-1972-DOC (KKx), 2019 WL 4221397, at *2 (C.D. Cal. June 5, 2019) (citing *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009)). California's Song-Beverly Act authorizes a prevailing buyer to recover attorneys' fees "based on actual time expended, determined by the court to have been reasonably incurred." Cal. Civ. Code 1794(d). The Court is to base the fee award "upon actual time expended on the case, as long as such fees are reasonably incurred—both from the standpoint of time spent and the amount charged." *Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 35 (2018). "By permitting prevailing buyers to recover their attorney fees, [the California] Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible." *Murillo v. Fleetwood Enters., Inc.*, 17 Cal. 4th 985, 994 (1998).

The Song-Beverly Act also authorizes prevailing buyers to recover reasonably incurred "costs and expenses." *Id.*

The "prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Morris v. Hyundai Motor Am.*, 41 Cal. App. 5th 24, 34 (2019) (internal quotation marks omitted) (collecting cases).

## IV.    DISCUSSION

The Court addresses attorneys' fees first, followed by costs and expenses.

## A.    Attorneys' Fees

In determining the amount of attorneys' fees to award under Civil Code section 1794(d), a court must utilize the "lodestar" method of calculating the award, accomplished by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Morris*, 41 Cal. App. 5th at 34; *see Meister v. Regents of Univ. of Cal.*, 67 Cal. App. 4th 437, 448–49 (1998) ("[T]he California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation."). If

the court finds the time expended or rates requested are not reasonable, "it must take this into account and award attorney fees in a lesser amount." *Morris*, 41 Cal. App. 5th at 34.

After fixing a reasonable fee award using the lodestar method, the Court has discretion to apply a positive or negative multiplier based on (1) the complexity of the case and procedural demands, (2) the skill exhibited and results achieved, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award. *Morris*, 41 Cal. App. 5th at 34; *Negrete*, 2019 WL 4221397, at *2. "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). However, in imposing a multiplier, courts must ensure not to do so on the basis of a criterion that it already considered in adjusting the hours reasonably expended or the reasonable hourly rate. *See, e.g.*, *Salmeron v. Ford Motor Co.*, No. 2:18-cv-07266-SVW-PLA, 2020 WL 9217979, at *6 (C.D. Cal. July 14, 2020).

///
///
///
///
///
///
///
///
///
///
///
///

Pacheco had ten attorneys from Knight Law Group, LLP ("Knight Group") and four attorneys from The Altman Law Group ("Altman Group") billing on this matter at the following rates and for the following numbers of hours:

| Knight Law Group, LLP | | | |
|---|---|---|---|
| SBM | Managing Partner | $550 | 3.5 hours |
| ALM | Partner | $350 (2020) | 10.9 hours |
| ALM | Partner | $400 (2021) | 7.6 hours |
| JWC | Senior Attorney | $425 | 17 hours |
| KSC | Associate | $375 | 14.5 hours |
| HA | Associate | $325 | 3.8 hours |
| MC | Associate | $300 (2020) | 4.3 hours |
| MC | Associate | $345 (2021) | 3.9 hours |
| MM | Associate | $295 | 2.2 hours |
| DK | Associate | $250 (2020) | 3.9 hours |
| DK | Associate | $295 (2021) | 3.9 hours |
| SS | Associate | $225 | 3.1 hours |
| AL | Associate | $200 | 7.9 hours |

| The Altman Law Group | | | |
|---|---|---|---|
| BCA | Managing Partner | $950 | 6.3 hours |
| CJU | Associate | $400 | 22.5 hours |
| DA | Associate | $325 | 54.8 hours |
| AJ | Associate | $300 | 0.5 hours |

(Mikhov Decl., Ex. A ("Knight Fee Records"); Decl. Bryan C. Altman ("Altman Decl.") Ex. C ("Altman Fee Records") ECF No. 43-3.)  Accordingly, Plaintiff seeks $30,365 in attorneys' fees for work done by the Knight Group and $32,945 in attorneys'

fees for work done by the Altman Group.  Plaintiff additionally requests a lodestar multiplier of 1.5 on the attorneys' fees, for a total fee award of $94,965.  (Mot. Attorneys' Fees 18–20.)

Ford argues that while Pacheco is entitled to recover attorneys' fees in a Song-Beverly case, the number of hours spent on this case and the hourly rates charged are unreasonable.  (Opp'n Mot. Attorneys' Fees 6–9, ECF No. 48.)  Ford also contends that this case does not warrant the application of a multiplier.  (*Id.* at 10–11.)

### 1.   Hourly Rates

The Court first determines whether the requested hourly rates are reasonable.  "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)).  "Generally, the relevant community is the forum in which the district court sits."  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  In the event that the moving party fails to provide affidavits from local attorneys or from a fee expert to show that the requested rates match the prevailing market rates, the district court may rely on its own knowledge of customary rates and its familiarity with the legal market.  *See Ingram v. Oroudijian*, 647 F.3d 925, 928 (9th Cir. 2011).

In support of his attorneys' fees request, Pacheco provides a self-compiled survey of seven consumer attorneys showing hourly rates as high as $800 an hour.  (Mikhov Decl. ¶ 37.)  Pacheco also points to a 2017–2018 attorney fee survey report showing a median hourly rate of $450 for attorneys handling vehicle cases brought under consumer protection law, and an average hourly rate of $531 for consumer law attorneys with more than 45 years of experience.  (Altman Decl. Ex. A ("Attorney Fee Survey Report") 59.)  Finally, Pacheco cites Ninth Circuit cases, many from the Central

District, approving rates up to $550, and at least one case approving an hourly rate of $695 an hour.  (*See* Reply ISO Mot. Attorneys' Fees 2–5, ECF No. 51.)

Ford, for its part, cites a series of cases finding the prevailing hourly rate for lemon law work to be around $325 for partners and $225 for associates.  (Opp'n Mot. Attorneys' Fees, 12–16 (citing cases from the Central, Southern, and Northern Districts).)  In many of these cases, the parties and the court relied on the 2018 Real Rate Report to arrive at their decisions.  *See, e.g.*, *Arias v. Ford Motor Company*, No. 5:18-cv-1928-PSG (SPx), 2020 WL 1940843, at *4–*7.

The Court notes that both the Attorney Fee Survey Report cited by Pacheco and the 2018 Real Rate Report referred to by Ford focus on nationwide hourly rates rather than those in the Los Angeles market.  Moreover, the Court does not find Pacheco's self-reported rates to be reliable, as they consist of a biased sample of only seven attorneys, not all of whom specialize in lemon law matters.  (*See* Mikhov Decl. ¶ 37.) The Court makes the following adjustments, relying on these reports and surveys, the evidence-backed facts about the attorneys who worked on this case, and the Court's own familiarity with the legal market:

- The $425 per hour charged by Knight Group's JWC is unreasonable given JWC's non-partner position and the lack of clarity regarding how long JWC has practiced lemon law.  (Mikhov Decl. ¶ 34.)  The Court therefore reduces JWC's hourly rate to **$375/hour**.

- The $375 per hour charged by Knight Group's KSC is unreasonable given KSC's associate position and minimal additional credentials. (Mikhov Decl. ¶ 28.)  The Court therefore reduces KSC's hourly rate to **$350/hour**.

- The $950 per hour rate charged by Altman Group's BCA is patently unreasonable.  The Court therefore reduces BCA's hourly rate to **$550/hour**.

- The $400 per hour rate charged by Altman Group's CJU is unreasonable given that CJU appears to have practiced consumer protection law for five years or less. (Altman Decl. ¶ 10.)  The Court reduces CJU's hourly rate to **$300/hour**.

- The $325 per hour rate charged by Altman Group's DA is unreasonable given that DA appears to be a new attorney whose credentials, though substantial, are primarily academic.  (Altman Decl. ¶ 11.)  The Court reduces DA's hourly rate to **$250/hour**.

The Court determines that the remainder of the rates charged by Pacheco's attorneys, while generally higher than the typical rates in Los Angeles for attorneys with similar experience, nevertheless fall within the range of reasonableness.

2. *Hours Expended*

In analyzing the reasonableness of the number of hours expended, the Court must examine detailed time records to determine whether the hours claimed are adequately documented and whether any of them are unnecessary, duplicative, or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), opinion amended on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)).  The trial court, due to its familiarity with the case, is in the best position to evaluate the reasonableness of the hours requested.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008).

Knight Group includes in its billing records an hour of time for JWC to prepare for and attend a hearing on this matter.  (*See* Knight Fee Records 8.)  Because no hearing was held, the Court **reduces JWC's hours by 1**.

Knight Group includes in its billing records an estimated 9 hours at a rate of $425 per hour for JWC to review and respond to Ford's oppositions to these Motions.  (*See id.*)  However, Knight Group acknowledges that it only spent 7 hours at a rate of $295 per hour for DK to review and respond to the oppositions.  (*See* Decl. Daniel Kalinowski ("Kalinowski Decl.") ¶¶ 4–6, ECF No. 51-1.)  Accordingly, the Court **reduces JWC's hours by 9** and **increases DK's hours billed in 2021 by 7**.

Knight Group's SBM billed $440 for the 0.8 hours spent to "review and audit billing" in preparation for Pacheco's Motions.  (*See* Opp'n Mot. Attorneys' Fees 17; Knight Fee Records 8.)  Although the practice of reviewing and auditing one's own

billing records is generally commendable, "it is unreasonable that Defendant should pay Plaintiffs' attorneys to confirm the accuracy of their own bills." *Holcomb v. BMW of N. Am., LLC*, No. 18-CV-00475 JM (BGSx), 2020 WL 759285, at \*6 (S.D. Cal. Feb. 14, 2020). Accordingly, the Court **reduces SBM's hours by 0.8**.

Knight Group's SBM billed 2.2 hours without including the date of work. (Opp'n Mot. Attorneys' Fees 21–22; Knight Fee Records 1.) "By failing to identify *when* [Plaintiff's attorney] performed this work, Plaintiff has failed to meet its burden of sufficiently 'documenting the hours expended in the litigation.'" *Arriaga v. Ford Motor Co.*, No. 18- CV-9089-DSF (KSx) (C.D. Cal. May 8, 2020), at \*10 (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007)). The Court therefore **reduces SBM's hours by 2.2**.

Ford contests two sets of discovery-related billing entries in the Knight Group's Fee Records, claiming that the entries are substantially identical. (*See* Opp'n Mot. Attorneys' Fees 20.) Specifically, on October 16, 2018, attorney KSC billed 1.9 hours at a rate of $375 an hour to draft various discovery documents, and on May 15, 2019, attorney ALM billed 2.6 hours at a rate of $350 an hour to draft similar documents. (*See* Knight Fee Records 1–2.) Pacheco explains that because Ford did not respond to the first set of discovery requests after removing the case to federal court, his attorneys needed to draft new requests after removal. (Reply ISO Mot. Attorneys' Fees 9.) The Court does not find the 2.6 hours utilized to re-draft the discovery requests to have been reasonably incurred and accordingly **reduces ALM's hours billed in 2020 by 2.6**.

Ford also challenges the 6.7 hours Knight Group's JWC spent filing the instant Motions. These Motions are largely template motions Pacheco's counsel uses in many Song-Beverly cases, and assuming the billing records are complete and accurate, these Motions require little more than (1) setting forth the substantive facts and procedural history of the case and (2) adding names and numerical figures to the analysis section. The former, of course, is the same in both Motions. The Court does not find the

6.7 hours used to draft the Motions to have been reasonably incurred and accordingly **reduces JWC's hours by 3.7.**

Ford challenges additional time entries it claims are inefficient, unnecessary, or redundant.  (*See* Opp'n Mot. Attorneys' Fees 17–23.)  The Court accepts in part and rejects in part these additional challenges.  On one hand, the Court does not find the work Pacheco's attorneys spent preparing and reviewing documents to have been generally unnecessary or "clerical tasks" better suited for non-attorneys or lower-billing associates.  (*See* Opp'n Mot. Attorneys' Fees 19–20, 22–23.)  Disputed entries that include "preparing, reviewing, and drafting notices of deposition . . . are not 'purely clerical' tasks," and the Court declines to exclude them from the fee award.  *Bauman v. Ford Motor Co.*, No. 18-CV-7971-DMG (Ex), 2021 WL 2792310, at *7 (C.D. Cal. Feb. 3, 2021) (quoting *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated on other grounds by Davis v. City & County of San Francisco*, 984 F.2d 345 (9th Cir. 1993)).

On the other hand, the Court agrees that intrinsic inefficiency and duplication of labor arises from the fact that this case was litigated by a total of fourteen attorneys from two different firms.  Mathematically, it is more straightforward to incorporate this observation into the multiplier analysis, which the Court does below.

The Court does not adjust the number of hours billed by the Altman Group.  The Court found no individual line-items that need adjustment in the Altman Group's records.  The Altman Group's billing records, like those of the Knight Group, do indicate some inefficiency or duplicated work due to a large number of attorneys working on the case, and the Court incorporates this observation into the multiplier analysis, below.

In sum, after reviewing the attorneys' fees record provided by Pacheco, the lodestar calculations are as follows.

///

///

| Knight Group Lodestar Calculations | | | |
|---|---|---|---|
| **Attorney** | **Lodestar Rate** | **Lodestar Hours** | **Lodestar Total** |
| SBM | $550 | .5 hours | $275.00 |
| ALM | $350 | 8.3 hours | $2,905.00 |
| ALM | $400 | 7.6 hours | $3,040.00 |
| JWC | $375 | 3.3 hours | $1,237.50 |
| KSC | $350 | 14.5 hours | $5,075.00 |
| HA | $325 | 3.8 hours | $1,235.00 |
| MC | $300 | 4.3 hours | $1,290.00 |
| MC | $345 | 3.9 hours | $1,345.50 |
| MM | $295 | 2.2 hours | $649.00 |
| DK | $250 | 3.9 hours | $975.00 |
| DK | $295 | 10.9 hours | $2,950 |
| SS | $225 | 3.1 hours | $697.50 |
| AL | $200 | 7.9 hours | $1,580.00 |
| **KNIGHT GROUP LODESTAR TOTAL:** | | | **$23,520** |

| Altman Group Lodestar Calculations | | | |
|---|---|---|---|
| **Attorney** | **Lodestar Rate** | **Lodestar Hours** | **Lodestar Total** |
| BCA | $550 | 6.3 hours | $3,465 |
| CJU | $300 | 22.5 hours | $6,750 |
| DA | $250 | 54.8 hours | $13,700 |
| AJ | $300 | 0.5 hours | $150 |
| **ALTMAN GROUP LODESTAR TOTAL:** | | | **$24,065** |

### 3.   Lodestar Multiplier

The Court now evaluates whether a lodestar multiplier should be awarded, considering, among other things, (1) the complexity of the case and procedural demands, (2) the skill exhibited and results achieved, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award.  *See Morris*, 41 Cal. App. 5th at 34.

This case did not present any particularly novel or complex issues and did not require special skills.  The parties exchanged written discovery, conducted depositions, and prepared pretrial documents—all of which are standard litigation tasks. Furthermore, Pacheco does not assert his counsel sacrificed other employment for this case.  Accordingly, the Court finds that the first three factors do not weigh in favor of a positive multiplier.

As to the fourth factor, Song-Beverly litigation is not true contingent litigation. In true contingent litigation, an attorney's fee is awarded as a percentage of the plaintiff's recovery.  In Song-Beverly cases, as discussed above, the attorney's fee award is tethered to the fees actually and reasonably incurred, with no regard whatsoever for the total amount recovered by the buyer.  *See Morris*, 41 Cal. App. 5th at 35 (discussing the "prohibited proportionality analysis").  A fee's contingent nature is relevant to the multiplier analysis because true contingency increases the risk the attorney assumes, and in certain cases, courts should apply a positive multiplier in recognition of that risk.  Certainly, Song-Beverly attorneys assume the risk of receiving no recovery at all, but that risk is hedged somewhat by the Song-Beverly Act's lodestar-based attorneys' fee provision, which allows for fee awards that are in some cases many times greater than the plaintiff's damages.  Thus, the fourth factor does not weigh materially in favor of a positive multiplier.

For these reasons, the Court will not award a positive multiplier.

That said, as indicated above, a negative[1] multiplier is appropriate because the high number of attorneys created inefficiencies in the litigation process.  (Opp'n Mot. Attorneys' Fees 15–16.)  Although "the use of a large number of attorneys in Song-Beverly Act cases appears relatively common," *Holcomb v. BMW of N. Am., LLC.*, 2020 WL 759285 at *3 (S. D. Cal. Feb. 14, 2020), the fact that a practice is common does not mean that it is efficient in all cases.  The Court has reviewed the billing records in this case and finds that the individual line items reflect a mild to moderate amount of inefficiency arising from the high number of attorneys that worked on this case.  When, as here, a case is "significantly overstaffed," the court may adjust the award, either by adjusting the number of hours reasonably incurred or by applying a negative multiplier. *Salmeron*, 2020 WL 9217979, at *6.   Accordingly, the Court applies a **negative multiplier of 0.9** (that is, a 10% reduction) to the attorney fee awards.

Finally, the Court "can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  The court may properly impose a "haircut" reduction even after imposing a negative multiplier based on express criteria.  *See Salmeron*, 2020 WL 9217979, at *8.  Based on the history of this case and the Court's experience with similar cases, the Court finds that a "haircut" reduction is appropriate here and applies an additional **negative multiplier of 0.9** (that is, a 10% reduction) to the attorney fee awards.  *See id.*

Accordingly, the Court **AWARDS** Pacheco attorneys' fees in the amount of $23,520 x 0.9 x 0.9 = **$19,051.20** to Knight Group and $24,065 x 0.9 x 0.9 = **$19,492.65** to Altman Group.

---

[1] Strictly speaking, the phrase "negative multiplier" is a misnomer.  The multiplier itself is not a negative number; it is a positive number with a value of less than 1, such that applying the multiplier decreases the lodestar.  The Court uses the phrase "negative multiplier" as a way of referring to a multiplier that decreases the lodestar when applied.

**B.      Costs and Expenses**

Pacheco also seeks $19,203.98 in costs and expenses.  (Mot. Costs & Expenses Ex. A ("Cost & Expense Records") 4–7, ECF No. 44-2.)  Ford opposes these costs and expenses on the basis that they are disallowed under federal court rules or are otherwise unreasonable.[2]  (*See generally* Opp'n Mot. Costs & Expenses, ECF No. 49.)

"An award of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d), even in diversity cases."  *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003).  However, the Ninth Circuit carved out an exception to this rule in *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1052 (9th Cir. 2003).  In *Clausen*, the Ninth Circuit affirmed an award of expert witness fees under Oregon law after determining that "a state *damages provision* that permits prevailing plaintiffs . . . to recover 'costs of any kind' as *one element of its compensatory damages*" was "substantive in nature."  *Id.* at 1064–65.  The relevant Oregon law defined damages as: "damages, costs, losses, penalties or attorney fees of any kind for which liability may exist under the laws of this state resulting from, arising out of or related to the discharge or threatened discharge of oil."  *Id.* at 1061 (quoting Or. Rev. Stat. § 468B.300(6)) (internal quotation marks omitted)).

Here, the Song-Beverly Act provides:

> If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

---

[2] Ford additionally contends that because it offered to settle the case on June 8, 2021, the Court should not award Pacheco costs incurred after that date.  (*See* Opp'n Mot. Costs & Expenses 14–15.)  Because Ford allocates only two sentences for this argument and cites no authority supporting it, the Court declines to consider it.  *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived.").

14

Cal. Civ. Code § 1794(d).   District courts within the Ninth Circuit disagree about the application of *Clausen* to the Song-Beverly Act's "costs and expenses" provision.  *See Seebach v. BMW of N. Am., LLC*, No. 2:18-CV-00109-KJM (ACx), 2021 WL 516712, at *2 (E.D. Cal. Feb. 11, 2021) (enumerating decisions finding *Clausen*'s exception applicable, and other decisions finding it inapplicable, to Song-Beverly costs and expenses).

This Court finds persuasive the decisions construing the Song-Beverly Act's costs and expenses provision as substantive.  The Ninth Circuit in *Clausen* described the inclusion of "costs of any kind" in the definition of damages as "an 'express indication' of [the] state legislature's 'special interest in providing litigants' with full compensation for reasonable sums expended."  *Clausen*, 339 F.3d at 1065 (quoting *Chevalier v. Reliance Ins. of Ill.*, 953 F.2d 877, 886 (5th Cir. 1992).  Although the Song-Beverly Act does not explicitly define damages to include costs and expenses, the Court finds the deliberate inclusion of costs and expenses as part of the judgment a buyer can recover sufficiently indicative of the California legislature's intent that prevailing litigants in a Song-Beverly action are provided with "full compensation for reasonable sums expended."  *Id.*; *see also Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 138 (1995) (determining, based on legislative history of Song-Beverly Act, that the Act permits the recovery of expert witness fees not provided by Code of Civil Procedure section 1033.5).  And the fact that California courts would look to the substantive provisions of the Song-Beverly Act in awarding costs and expenses, rather than to the cost provision in California Code of Civil Procedure section 1033.5 governing civil cases generally, reinforces this conclusion.  California Civil Code section 1794(d) is substantive in nature, and Pacheco may therefore recover his "costs and expenses" under that provision.

The practical effect of this finding in federal court is that Pacheco may recover a wider variety of costs and expenses he incurred "in connection with the commencement and prosecution of [the] action," and in so doing, he is not limited by any cost provisions

in the Federal Rules of Civil Procedure or the Central District Local Rules.  Cal. Civ. Code § 1794(d).  The Court finds that all categories of costs and expenses Pacheco requests qualify as "costs and expenses" as this term is used in Civil Code section 1794(d).[3]

That said, the Song-Beverly Act nevertheless requires that the costs and expenses Pacheco requests were reasonably incurred.  *Id.*  Ford argues that the costs for several deposition transcripts are unreasonable.  (*See* Opp'n Mot. Costs & Expenses 9–12.)  In particular, Ford computes that the per-page cost for the transcript of the depositions of Chris Ike and Christopher Eikey were $6.55, which Ford points out greatly exceeds the $3.65 per-page transcript rate set by the Judicial Conference of the United States.  (*See id.* at 7–8.)  Pacheco, for his part, provides no explanation for these inflated rates, nor does Pacheco contest any of these calculations.  (*See* Reply ISO Mot. Costs & Expenses 8, ECF No. 50.)  The Court thus finds the $6.55 per page rates to be unreasonable and awards these transcript costs pursuant to the Judicial Conference rates.  Accordingly, the Court deducts $1,176.60 + $1,688.05 = **$2,864.65** from Pacheco's requested costs and expenses.[4]  (*See* Opp'n Mot. Costs & Expenses 7–8.)

Additionally, one of expert Anthony Micale's invoices contains the line items relating to Micale's expert deposition.  (Cost & Expense Records 29.)  This invoice indicates a total of $2,012.50 in expert fees.  The Court finds that all these fees arise from Micale preparing for the deposition, which are not all reasonably incurred.  While some preparation is naturally expected, the Court expects that Micale would already be familiar with the case based on the work he already performed.  The Court therefore deducts **$1,000** from this invoice as not reasonably incurred.

---

[3] This includes Pacheco's requested filing fees, service of process fees, deposition transcript fees, deposition conference room fees, expert witness fees, attorney services fees, mediation fees, and overnight courier fees.  (Decl. Steve Mikhov re: Costs Ex. A, ECF No. 44-2.)

[4] Ford observes that other transcripts were billed at a flat $375 without reference to the length of the transcripts and argues that the fee is therefore not sufficiently supported.  (*See id.* at 10.)  An examination of the relevant invoice reveals that these are minimum transcript costs, which the Court also finds is reasonable.  (*See* Cost & Expense Records 20.)

Finally, the Court notes two entries for a "Meal" in Micale's invoice and will not award these items as costs or expenses. (*Id.* at 28.) Therefore, the Court further deducts $100.55 + $109.80 = **$210.35**.

The Court has reviewed the remainder of the requested costs and expenses and finds each of them to have been "reasonably incurred by [Plaintiff] in connection with the commencement and prosecution of [this] action." Cal. Civ. Code § 1794(d). Accordingly, the Court **GRANTS** costs and expenses in the amount of $19,203.98 – ($2,864.65 + $210.35 + $1,000) = **$15,128.98**.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motions for Attorneys' Fees, Costs, and Expenses, (ECF Nos. 43, 44), and **AWARDS** the following**:**

1.   **$19,051.20** in attorneys' fees to Knight Law Group,

2.   **$19,492.65** in attorneys' fees to Altman Law Group, and

3.   **$15,128.98** in costs and expenses.


Defendant shall render payment within **sixty (60) days**.


**IT IS SO ORDERED.**


March 21, 2022


_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**